# Klepser *v.* Furry, Appellant.

*Trade-marks—Similarity of device on label—"Golden Dove"— Registration Acts of June 20, 1901, P. L. 582, and April 24, 1905, P. L. 302—Laches—Injunction—Accounting for past profits.*

1. Under the Acts of June 20, 1901, P. L. 582, and April 24, 1905, P. L. 302, anything done by a rival in the same business by imitation or otherwise designed or calculated to mislead the public into the belief that in buying the product offered by him for sale, they were buying the product of another's manufacture, will be in fraud of that other's rights and will afford just ground for equitable interference.

2. A trade-mark on a label attached to flour bags, consisting of a golden dove within the center surrounded by a large circle, within which are printed the words "Golden Dove," and duly registered under the Acts of 1901 and 1905, will be protected against a device practically identical in the form and posture of the dove, and differing only in color and reading matter.

3. In such case plaintiff cannot be charged with laches, where, after registering his trade-mark, he has proceeded promptly to assert them, although he may have delayed previously in asserting his rights for several years after knowledge of the infringement, and this is especially so where the markets for the two products were different until shortly before plaintiff filed his bill.

4. Laches may bar an accounting for past profits, but will not bar an injunction against a further continuance of the wrong.

Argued February 7, 1927. Before FRAZER, WALLING, KEPHART and SCHAFFER, JJ.

Appeal, No. 113, Jan. T., 1927, by defendant, from decree of C. P. Blair Co., Equity Docket "H," No. 1078, for plaintiff on bill in equity, in case of H. M. Klepser, trading as Klepser Brothers, v. P. B. Furry. Affirmed.

Bill for injunction for violating trade-mark. Before BALDRIGE, P. J.

The opinion of the Supreme Court states the facts.

Decree for plaintiff. Defendant appealed.

*Error assigned* was, inter alia, decree, quoting record.

*John Woodcock,* with him *W. I. Woodcock* and *S. H. Sell,* for appellant.—It is not enough that there may be a possibility of deception. The offending label must be such that it is likely to deceive persons of ordinary intelligence: Heinz v. Lutz, 146 Pa. 593; Brown v. Siedel, 153 Pa. 60; Pa. Cent. Brewing Co. v. Brewing Co., 258 Pa. 45; Portuondo Cigar Mfg. Co. v. Mfg. Co., 222 Pa. 116; Lafean v. Weeks & Co., 177 Pa. 412.

If one having a legal right to use a certain trade-mark knowingly suffers another to use a similar trade-mark over a period of from eight to ten years, who expends large sums of money in introducing the product on the market, without objection, the former is estopped to enjoin such use: Coates v. Thread Co., 149 U. S. 562; Lane v. Lock, 150 U. S. 193; Tygert Allen Fertilizer Co. v. Tygert Co., 191 Pa. 336.

*John M. Klepser,* for appellee.—The question of similarity and difference as to trade-marks in determining infringement or not is well settled by many cases in Pennsylvania. The test is a comparison of the labels and trade-marks in each particular case: Portuondo Cigar Mfg. Co. v. Mfg. Co., 222 Pa. 116.

The features of defendant's cigar label in that case are not as close in their arrangement and likeness as are the features and arrangement of the details in the trademarks or labels in the case at bar, and if the injunction was granted under those circumstances, the court should not hesitate in affirming the learned court in the present case: Portuondo Cigar Co. v. Cigar Co., 222 Pa. 116; B. V. D. Co. v. Kauffman & Baer Co., 272 Pa. 240; La Lance & Grosjean Mfg. Co. v. Stamping Co., 109 Fed. 317; Suburban Press Co. v. Pub. Co., 227 Pa. 148; Tupello Cotton Co. v. Bleached Goods Co., 4 Fed. 2d 953; Schmick v. Broom Works, 79 Pa. Superior Ct. 331; Scranton Stove Works v. Clark, 255 Pa. 23; Fraim Lock Co. v. Shimer, 43 Pa. Superior Ct. 221; Shaw v. Pilling, 175 Pa. 78; Am. Clay Mfg. Co. v. Mfg. Co., 198 Pa. 189.

We submit that plaintiff is not to be estopped on the plea of laches no matter how long plaintiff has refrained bringing suit to protect his trade-mark: Hoyt v. Hoyt, 143 Pa. 623; Bergner & Engel Brewing Co. v. Koenig, 30 Pa. Superior Ct. 618; Fraim Lock Co. v. Shimer, 43 Pa. Superior Ct. 221; McLean v. Fleming, 96 U. S. 245; Menendez v. Holt, 128 U. S. 514.

OPINION BY MR. JUSTICE SCHAFFER, April 11, 1927:

This is a bill in equity to enjoin the use of a trademark. The chancellor determined the case in plaintiff's favor, awarded the permanent injunctive relief prayed for and defendant appeals. Both parties are millers and the trade-marks are used on the bags of flour sold by each.

The registration certificate issued to plaintiff by the secretary of the Commonwealth under the provisions of the Act of June 20, 1901, P. L. 582, and the amendment of April 24, 1905, P. L. 302, describes his trade-mark as "a golden dove within a circle, the whole surrounded by a larger circle within which are the words printed 'Golden Dove.'" It is described by the chancellor in his findings as "a picture or symbol of a golden or yellow dove in flight, over a blue background within a circle, the whole surrounded by a larger double blue circle within which are printed the words 'Golden Dove Brand' in red letters." He finds "That the label or symbol of the defendant is a picture of a dove in flight, identical in form and shape with the dove of the plaintiff's trade-mark, over a blue background within a circle, the whole surrounded by a larger blue circle within which are printed the words 'Three Spring Mills, White Wonder,' and in a similar but smaller sized label the same dove and background with the same circles, with the words 'Three Spring Mills, White Dove.'" The chancellor determined that "the defendant's label is identical with the trade-mark of the plaintiff in appearance, form, design and description with a few very minor changes; for instance, the dove is of a lighter color and the outer circle has a beaded effect."

Plaintiff adopted his symbol of the golden dove in 1888, defendant his of the white dove in 1893. Plaintiff registered his trade-mark on August 4, 1925. Defendant has not attempted to register his.

While both parties have been marketing their respective brands of flour, the plaintiff since 1888, and defendant since 1893, they did not come into competition, although their mills were only eight miles apart, until about 1915, when defendant, owing to the building of an improved highway, was able to put his flour into the Altoona market by motor truck; this was one of the principal marts for plaintiff's product. Plaintiff learned of defendant's use of the trade-mark soon after the lat-

ter began to dispose of his flour in Altoona but took no steps to assert an infringement until August, 1925, when a formal complaint was made to defendant followed by this proceeding in September of that year.

In his discussion of the case the chancellor says: "A critical inspection and comparison of the trade-marks used by the parties disclose certain differences but there is a very general similarity in the form, figure and appearance of the two trade-marks......It is contended upon the part of the defendant that the coloring and lettering of his trade-mark are so different as to readily distinguish it from that of plaintiff." The court points out that it is not the color or the words in the circle which give the plaintiff a special privilege but that the essential characteristic is the design or figure, in this instance the dove. In Juan F. Portuondo Cigar Mfg. Co. v. Vincente Portuondo Cigar Mfg. Co., 222 Pa. 116, 131, the use by defendant of certain trade-marks was forbidden although they "were not a servile and exact reproduction of those used by [the plaintiff]......but they bear such resemblance that it is impossible to reach any other conclusion than that they were designed from them, with not too much variation to prevent them from being accredited by the unobservant and unwary as the proper marks and labels of" the plaintiff. From our inspection of the labels which were produced before us on the argument the same thing can be said of the present case.

In Tupelo Cotton Mills v. American Bleached Goods Co., 4 Fed. Rep. 2d Series 953, the appellee used a trade-mark consisting of a bird with wings outstretched, just leaving a twig, the body of the bird being red and its wings and tail black. In a circle surrounding the bird, said to represent a scarlet tanager were the words "Pride of the West—Indian Linon." The appellant adopted as his trade-mark a bird perched on a twig with wings outstretched, carrying in its mouth a string from which was suspended a disk bearing the word "Tupelo." In the

drawing the breast of this bird, said to represent a blue-bird, was lined for red while the head, back, tail and wings were lined for blue. It was held that the resemblance was such as likely to cause confusion and to create mistakes in the minds of the public notwithstanding the contention of defendant that the two birds were readily distinguishable. The Court of Appeals of the District of Columbia in disposing of the case said: "Appellant suggests that these two birds are easily distinguishable. They might be by ornithologists, but the purchasing public includes comparatively few persons who have particular knowledge of birds. To the average person these goods would be bird goods, and would not be known as bluebird or tanager goods." Commenting upon that case the court below here observed: "The resemblance was not so strong as it is in the instant case. The principle object, that of a dove, in its form as well as the spread of its wings makes an unusual figure. Placing the various samples which were offered in evidence side by side, the similarity is so marked that if they were separated the public could be readily confused, especially if they kept in mind the chief feature of the trade-mark, namely, a dove in flight, against a solid background."

In a letter to plaintiff dated August 4, 1924, defendant, while not admitting an actual infringement of plaintiff's trade-mark, tacitly acknowledged a similarity. He wrote: "I had a letter a few days since from your attorney......in regard to an alleged infringement on your Golden Dove Brand. I have noticed in the last few shipments that the color of the dove has been very nearly like yours, but not made so by my orders."

Defendant produced as witnesses four merchants engaged in business in Altoona who sold the flour of both parties, who testified that so far as their knowledge went there had been no confusion about the flour among the retail trade because of the similarity of labels. While such testimony is of undoubted value in aiding the

determination as to whether the purchasing public
would be misled in its buying (Heinz v. Lutz, 146 Pa.
592) yet it is not conclusive on that aspect of the in-
quiry. In view of the chancellor's findings and our own
inspection and defendant's heretofore quoted letter, it
could not be said that customers for plaintiff's flour
might not be misled by defendant's markings to pur-
chase his. As was said in the Portuondo Case (222 Pa.
116, 132), "The general rule is that anything done by a
rival in the same business by imitation or otherwise,
designed or calculated to mislead the public in the belief
that in buying the product offered by him for sale, they
were buying the product of another's manufacture,
would be in fraud of that other's rights, and would afford
just ground for equitable interference." This is the rule
of law crystallized in the Act of June 20, 1901, P. L.
582, as amended, which provides that, "Whenever [a]
person . . . . . . filed . . . . . . for . . . . . . registry any . . . . . .
trade-mark. . . . . . it shall be unlawful and a violation of
this act for any other person. . . . . . to make any use
. . . . . . of. . . . . . any such likeness or imitation thereof as
shall be calculated or liable to deceive." See also Shaw
v. Pilling, 175 Pa. 78; Pennsylvania Central Brewing
Co. v. Anthracite Beer Co., 258 Pa. 45; Suburban Press
v. Phila. Suburban Publishing Co., 227 Pa. 148; Scran-
ton Stove Works v. Clark, 255 Pa. 23; United Drug Co.
v. Kovacs, 279 Pa. 132.

Appellant further contends that even if plaintiff has a
superior right to use the trade-mark he has lost the right
to deny him its use by laches, plaintiff having admitted
he knew of defendant's use eight or ten years before be-
ginning this proceeding. We think it can be fairly in-
ferred from the testimony that for several years after
plaintiff became acquainted with the fact of defendant's
use, the flour of each was being largely sold in different
markets and that it was only in comparatively recent
times, shortly before plaintiff first notified defendant of
the infringement, that the sale of his product in the

Altoona market became of consequence to appellee. In suits for unfair competition or infringement it is well settled that mere laches in the sense of delay to bring suit does not constitute a defense. Such laches may bar an accounting for past profits, but will not .bar an injunction against a further continuance of the wrong: Hesseltine, The Law of Trade-Marks and Unfair Trade, page 282; Juan F. Portuondo Cigar Mfg. Co. v. Vincente Portuondo Cigar Mfg. Co., 222 Pa. 116; McLean v. Fleming, 96 U. S. 245; Menendez v. Holt, 128 U. S. 514. Furthermore, plaintiff on August 4, 1925, registered his trade-mark under the Act of 1901 heretofore cited and almost immediately thereafter began this proceeding. He was the only one entitled to register as he had been the longest user; after registration it was "unlawful and a violation of this act" for defendant to use such a likeness or imitation of it as he was putting forth. There is a sound public policy in the statute promoting honesty and fair dealing and its provisions should be upheld: Bergner & Engel Brewing Co. v. Koenig, 30 Pa. Superior Ct. 618.

The assignments of error are overruled and the decree affirmed at appellant's cost.