## GERBRON, Inc., v. GERBRON CLEANERS, Inc., et al.
### No. 1579.

District Court, E. D. Pennsylvania.

May 19, 1942.

S. S. Fortenbaugh, Jr. (of Shields, Clark, Brown & McCown), of Philadelphia, Pa., for plaintiff.

Morton S. Freeman, of Philadelphia, Pa., for defendants.

BARD, District Judge.

This is an action by Gerbron, Inc., against Gerbron Cleaners, Inc., Walter H. Gerbron, Walter J. Gerbron, Anita Gerbron, individually and trading as Gerbron Service Cleaning & Dyeing, and Joseph Myers, charging unfair competition by the defendants as a result of their engaging in the cleaning and dyeing business under names alleged to be deceptively similar to the trade name "Gerbron" claimed by the plaintiff. From the evidence I make the following special

### Findings of Fact.

1. Plaintiff is a Delaware corporation incorporated in 1932, since which time it has continuously engaged in the retail cleaning and dyeing business and has identified and advertised its services by the name "Gerbron".

2. Prior to 1936 the name "Gerbron" had won public acceptance in Philadelphia and vicinity as identifying the services of the plaintiff, and it continues to be so accepted.

3. Defendant Gerbron Cleaners, Inc., a Pennsylvania corporation, was incorporated in 1936 by the defendant Walter H. Gerbron, and is engaged in the cleaning and dyeing business.

4. Defendant Walter H. Gerbron is president and his son, Walter J. Gerbron, is secretary of the corporation.

5. The defendant Anita Gerbron is the wife of Walter H. Gerbron, and since April 18, 1941, has been registered under the fictitious name of "Gerbron Service."

6. The defendant Joseph Myers, in April of 1941, opened a store under the name of "Gerbron Service" at 1202 E. Chelten Avenue.

7. The matter in controversy exceeds the sum of $3,000.

8. Both the plaintiff and defendant corporations are engaged in the retail cleaning and dyeing business in the same general territory, are doing the same gen-

eral type of business, and are soliciting the same general public.

9. Defendants' use of the name "Gerbron" to identify services rendered by them has caused confusion in the minds of the public so that members thereof deal with the defendants in the belief that they are dealing with the plaintiff.

10. Plaintiff has been aware of the existence and operation of the defendant corporation since 1937.

### Discussion.

Plaintiff was incorporated in 1932 by Alfred T. Gerbron and began business as a cleaning and dyeing concern on Germantown Avenue, in the city of Philadelphia, during that year. With the successful development of its business it opened "pick-up" stores in downtown Philadelphia and in Wilmington, Delaware. Its volume of business increased until in recent years it has been in excess of $100,000 annually. It has spent and is spending substantial sums of money advertising in newspapers and otherwise. From the inception of its business it adopted as a symbol an oval in which the word "Gerbron" was written, and this appears on its trucks and in much of its advertising. There can be no doubt that the name "Gerbron" has become definitely identified with plaintiff's business in the mind of the public in the Philadelphia area for a number of years.

In 1936 the defendant Walter H. Gerbron, a brother of Alfred T. Gerbron, the founder and president of the defendant corporation, caused the defendant Gerbron Cleaners, Inc., to be incorporated. In that year it opened a retail store at 1316 West Columbia Avenue, in the city of Philadelphia, and began operations as a cleaner and dyer. Defendant Walter H. Gerbron was in active management of this business.

The defendant Anita Gerbron is the wife of Walter H. Gerbron and in 1941 registered the name "Gerbron Service" as a fictitious name, stating in her registration that her place of business was 1316 West Columbia Avenue, Philadelphia. This registration appears to have been obviously designed for the use and benefit of the defendant Gerbron Cleaners, Inc. Retail stores such as that of the defendant Joseph Myers were permitted to use the name "Gerbron Service" as the name of their stores under an arrangement by which they had their work done for them by the defendant Gerbron Cleaners, Inc., issued receipts bearing its name, and divided the gross income on a percentage basis.

The claim of the plaintiff is that the defendants have used, and are continuing to use, the name "Gerbron" for the purpose and with the result of deceiving members of the public into the belief that they are dealing with the plaintiff whose services have become in the public mind identified with that name. The defenses offered by the defendants are prior use by the defendant Walter H. Gerbron of the name "Gerbron" in connection with cleaning and dyeing establishments with which he was associated before the incorporation of the plaintiff; the lack of any actual confusion; and laches on the part of the plaintiff in asserting its present claim.

■ The defense that Walter H. Gerbron made such use of the name "Gerbron" in the cleaning and dyeing business prior to any use thereof by the plaintiff as to entitle him to use it now cannot be sustained. From the testimony of this defendant himself it is clear that he never made any such substantial use of the name "Gerbron" to identify his cleaning and dyeing businesses as would gain any appreciable public acceptance. On the other hand, until the incorporation of the defendant corporation in 1936, the businesses of the defendant Walter H. Gerbron were all conducted under other trade names except during a few months many years ago in which he operated as a Delaware corporation "Gerbron Cleaners, Inc.", which shortly went out of business. Although Walter H. Gerbron further testified that he used stationery with the name "Gerbron" while operating cleaning and dyeing businesses under other names, it is clear that there was no public identification of the name "Gerbron" with his services prior to its public identification and acceptance as designating the services of the plaintiff.

■ As to the defense that there has been no confusion between plaintiff's trade-name "Gerbron" and the name used by the defendants in their operations, the evidence is all to the contrary. It may be noted that in an action of this character actual confusion need not be shown, since it is the probability of confusion of the goods or services of the defendants with those of the plaintiff which forms the basis for relief. Restatement of the Law of

Torts, § 728; Great Atlantic & Pacific Tea Co. v. A. & P. Radio Stores, D.C. E.D.Pa., 20 F.Supp. 703.

In the present case the testimony showed numerous instances of actual confusion of customers, and a consideration of the nature of the question involved shows that such confusion, under the circumstances of this case, is almost inevitable. A large part of the business done by retail cleaning and dyeing establishments consists of orders received by telephone. The growth and development of such businesses depend largely on word of mouth recommendations. It is obvious that customers are not likely to make careful distinctions between slight differentiations in corporate titles which may appear in the telephone book. On the other hand, most members of the public would merely look for the identifying name of "Gerbron" and place their telephone orders in the belief that the "Gerbron" which they were calling was the one which they associated with that name or to which they had been referred, or in the belief that all the stores having such name were under common management. This in fact was demonstrated by the numerous instances of such confusion brought out in the testimony. There is considerable reason to believe that this confusion was deliberately fostered by the defendants, particularly in view of their distribution of cards bearing the name "Gerbron" with no address and of their recent adoption of the fictitious name of "Gerbron Service" to which they gave prominence in the classified section of the telephone book, but which at the time of trial they agreed to abandon in an effort to forestall the loss of the fruits of other infringements.

On the question of laches defendants' position has somewhat greater merit. It is true that plaintiff was aware for several years of the operations of the defendant corporation in the cleaning and dyeing business and its use of the name "Gerbron" in connection therewith and failed to make any protest. It also appears to be true that the defendants have incurred some expenses for advertising and publicizing their business under that name during those years. On the other hand, it is well settled that in an action for unfair competition mere laches in the sense of delay in bringing a suit does not constitute a defense to the granting of injunctive relief against continuance of the wrong, although it does operate as a bar to an accounting for its profits. Klepser v. Furry, 289 Pa. 152, 137 A. 175, and cases cited therein; Menendez v. Holt, 128 U.S. 514, 9 S.Ct. 143, 32 L.Ed. 526. This principle is of particular application where the defendant has wilfully sought to trade on the reputation of the plaintiff. Under all the circumstances of the present case the defense of laches does not operate as a bar to injunctive relief.

I make the following

## Conclusions of Law.

1. By virtue of its use of the name "Gerbron" since 1932 to identify its cleaning and dyeing business plaintiff has established that name as its trade name in the Philadelphia area and is entitled to protection against its use by the defendants in the business conducted by them.

2. Defendants' use of the names "Gerbron Cleaners, Inc.", "Gerbron Service" and "Gerbron" to identify businesses conducted by them tends to deceive, and in fact does deceive, members of the public into believing they are obtaining plaintiff's services when they are obtaining those of the defendants.

3. Such use as the defendant Walter H. Gerbron made of the name "Gerbron" to identify cleaning and dyeing businesses with which he was established prior to its acceptance as the trade name of the plaintiff was not sufficient to establish any right in him to use that name thereafter.

4. Laches of the plaintiff in failing to bring suit for several years after it knew of the operations of the defendant corporation using the name "Gerbron" is no bar to the granting of injunctive relief to it against the defendants under the circumstances of this case.

5. Plaintiff is not entitled to damages from the defendants.

6. Plaintiff is entitled to an injunction against the defendants prohibiting the continued use of the name "Gerbron", "Gerbron Service" or "Gerbron Cleaners, Inc.", or any other combination using the name "Gerbron" to identify or advertise cleaning and dyeing or related businesses conducted by them.

Counsel may submit a decree in accordance with these conclusions.